UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA ex rel.
ROBERT A. DICKEN,

      Plaintiff,

    v.　　　　　　　　　　　　　　　　　　　　　Case No. 13-CV-2691 (JNE/KMM)
　　　　　　　　　　　　　　　　　　　　　　　　　　**ORDER**
NORTHWEST EYE CENTER, P.A.,
CHRISTOPHER J. BORGEN, ERIC M.
TJELLE, and SANFORD HEALTH
NETWORK, *a South Dakota non-profit
corporation doing business in Minnesota*,

      Defendants.

    Plaintiff Dr. Robert A. Dicken, relator on behalf of the United States of America, brought claims against Defendants Northwest Eye Center, P.A., Dr. Christopher J. Borgen, and Dr. Eric M. Tjelle (collectively, the "Northwest Defendants") for violations of the False Claims Act ("FCA") and tortious interference. Dicken also brought claims against Sanford Health Network ("Sanford") for retaliation and breach of contract. Both the Northwest Defendants and Sanford move for dismissal. For the following reasons, the Court grants Defendants' motions with respect to the federal claims and declines to exercise supplemental jurisdiction over the remaining state law claims.

## I. STANDARD OF REVIEW

    Both the Northwest Defendants and Sanford move to dismiss under Fed. R. Civ. P. 12(b)(6). (*See* Dkt. Nos. 49, 60.) The Northwest Defendants also move to dismiss the FCA claims against them under Fed. R. Civ. P. 9(b). (*See* Dkt. No. 60.) When ruling on motions under either rule, the Court accepts the alleged facts as true, drawing all reasonable inferences in favor of the non-moving party. *See Drobnak v. Andersen Corp.*, 561 F.3d 778, 781 (8th Cir. 2009).

"This tenet does not apply, however, to legal conclusions or 'formulaic recitation of the elements of a cause of action'; such allegations may properly be set aside." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009); *see United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955-56 (8th Cir. 2012).

On Rule 12(b)(6) motions, the Court evaluates whether the alleged facts are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The Court draws on "its experience and common sense" to determine if the factual statements nudge a claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 679-70. When reviewing a complaint for compliance with Rule 9(b), the Court determines whether the plaintiff "state[s] with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

## II. BACKGROUND

The Amended Complaint alleges the following: Dicken is a resident of Minnesota and has been a practicing board-certified ophthalmologist since 1987. (*See* Amend. Compl. ¶¶ 14, 30, Dkt. No. 37.) Borgen and Tjelle are optometrists and currently own and operate Northwest at its clinic location in Thief River Falls, MN. (*See id.* ¶ 17.)

Dicken started practicing in Northwest's clinic in January 1988. (*Id.* ¶ 29.) In 2001 and 2002, Borgen and Tjelle joined Northwest and took over the practice from a retiring optometrist. (*Id.* ¶¶ 29, 30.) Starting around that time, in July 2002, Dicken began practicing separately, but continued seeing patients at Northwest's location. (*See id.* ¶ 14.) In April 2009, Dicken started working for a multi-specialty practice called MeritCare. (*Id.* ¶ 68.) When Sanford acquired MeritCare on January 1, 2010, Dicken became a Sanford employee. (*Id.*) Dicken continued to practice at Northwest's location until Sanford relocated him in August 2010. (*See id.*)

In July 2002, Dicken began to discover that Borgen and Tjelle, through Northwest, were submitting false claims for reimbursement from Medicare. (*See id.* ¶¶ 42, 79, 84, 93.) Dicken shared patients with the Northwest Defendants and had access to shared patient medical files. (*See id.* ¶¶ 29, 37.) After "treating patients, going over their medical files, operating surgically on patients, and working with [Borgen and Tjelle]," it became clear to Dicken that the Northwest Defendants were submitting false claims. (*See id.* ¶¶ 29, 38, 51.) In making this determination, Dicken relied on his extensive medical experience and knowledge of CPT and ICD-9 codes, which are used for diagnosis and billing purposes. (*See id.* ¶¶ 27, 41.)

Starting in 2008, Dicken began reporting the Northwest Defendants' fraud to Sanford leadership and, eventually, the Government. (*See id.* ¶¶ 68, 72.) Sanford discharged Dicken on April 30, 2011. (*See id.* ¶ 68.)

### III. DISCUSSION

**A. Pleading FCA Claims with Particularity**

Dicken brought two claims against the Northwest Defendants for violation of the FCA. The first claim (Count I) is for fraud and making false records and statements, under 31 U.S.C. § 3729(a)(1)(A)-(B). (*See* Amend. Compl. ¶¶ 81-104.) The second claim (Count II) is for conspiracy to violate the FCA in the ways claimed in Count I, under § 3729(a)(1)(C). (*See* Amend. Compl. ¶¶ 105-29.) Both claims must be pled with particularity under Rule 9(b). *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).

   1. *The FCA Fraud Claim*

In order to plead FCA fraud claims with particularity, relators must plead the "time, place, and content" of the fraud and "the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Olson v.*

*Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1070 (8th Cir. 2016) (quoting *Joshi*, 441 F.3d at 556). This heightened degree of detail "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).

The Northwest Defendants argue that Dicken failed to plead his FCA fraud claim with particularity under Rule 9(b) because he did not allege specific details of a fraudulent scheme, nor any specific examples of false claims submitted in furtherance of the scheme. (The Northwest Defendants' Memorandum in Support of Their Motion to Dismiss ("Nw. Def. Br.") 3-4, Dkt. No. 51.) Dicken responds that the Amended Complaint alleges enough detail to put the Northwest Defendants on notice as to which of their Medicare claims are fraudulent, enabling an adequate defense. (*See* Dicken's Memorandum in Opposition to the Northwest Defendants' Motion to Dismiss ("Pl. Br.") 2, 5, 22, Dkt. No. 56.) As such, Dicken argues that he does not need to allege representative examples of the fraud. (*See id.* at 3-4, 8, 14-17.)

Although Rule 9(b) does not require a relator to allege the details of *every* fraudulent claim, if the complaint alleges a systematic scheme of fraud, it must allege some representative examples showing a continuous pattern of fraud. *See, e.g.*, *Joshi*, 441 F.3d at 557-58. However, a relator need not plead specific examples if the relator alleges both the particular details of the scheme and indicia of reliability that support a strong inference that claims were actually submitted. *See United States ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 917-18 (8th Cir. 2014).

The Amended Complaint does not allege any specific examples and makes only general assertions. It fails to include details about any claims actually submitted to Medicare, except to

4

the extent that Dicken identifies which CPT and ICD-9 codes were abused.[1] Dicken argues there are several good reasons why he cannot plead representative examples, (*see* Pl. Br. 2, 5-6, 21), but courts have previously rejected each of Dicken's excuses, *see Joshi*, 441 F.3d at 560 (holding that pleading standards are not relaxed when the fraudulent scheme is complex, the scheme took place over a long period of time, or information concerning the fraud is in the defendant's control); *see also United States v. Walgreen Co.*, 846 F.3d 879, 882 (6th Cir. 2017) (rejecting a patient privacy excuse and holding that relators can use "customer initials, dates, or other non-identifying descriptions" when alleging representative examples).

Despite Dicken's failure to plead even one representative example, he may still meet Rule 9(b)'s pleading standard if he sufficiently alleged the details of a fraudulent scheme and indicia of reliability supporting a strong inference that claims were actually submitted.

a. Details of a Scheme to Defraud

Dicken argues he sufficiently pled details of the Northwest Defendants' scheme to defraud Medicare. (*See* Pl. Br. 13-14, 19-20.) He identified which doctors were involved (Borgen and Tjelle), when the scheme transpired (2002 to at least 2010), and where the fraud took place (Northwest's clinic). (*See id.* at 13-14.) As to how frequently the Northwest Defendants engaged in the fraud, he claims that "many" and a "majority" of patients were affected. (Amend. Compl.

---

[1] In his response to the Northwest Defendants' motion, Dicken provided the Court with a declaration and twenty-three patient charts as representative examples. (*See* Dkt. No. 57.) None of the Defendants objected. Even if the Court could consider these charts (it cannot), Dicken still would not meet Rule 9(b)'s particularity standard for the entire length of the claimed scheme. The charts only relate to procedures performed in 2009 and 2010, (*see id.*), but Dicken claims the fraud started in 2002 and continued until at least 2010, if not longer, (*see* Amend. Compl. ¶¶ 82, 84, 93, 99). To sufficiently allege a scheme spanning a period of time, the representative examples must be interspersed throughout the period—not isolated to a small part of the alleged scheme's existence—and within the statute of limitations period. *See Joshi*, 441 F.3d at 558 (holding that the relator did not meet Rule 9(b)'s particularity standard when he alleged examples for only one of the 16 years during which the fraudulent scheme allegedly took place).

¶¶ 51-52.) Dicken also alleged that he "has identified and procured material evidence for a number of different methods by which the [Northwest Defendants] have fraudulently obtained wrongful reimbursement from Medicare." (Amend. Compl. ¶¶ 43, 86.) He identified two methods: (1) billing eight specific codes, in certain combinations, and (2) using a list to keep track of when certain procedures could be performed. (*Id.* ¶¶ 44-47, 51-53, 85.) Dicken estimates these methods cost the Government "more than [one] million dollars." (*Id.* ¶¶ 48, 85.)

The Court finds that Dicken failed to plead with particularity the details of a scheme to defraud. Although he identified the who, when, and where of the fraud, he failed to set forth the what, how, and how often with enough specificity. Dicken's allegation that false claims were submitted for "many" and a "majority" of patients is too general. *See In re Baycol Prods. Litig.*, 732 F.3d 869, 880 (8th Cir. 2013) (finding insufficient the allegation that "all" claims were fraudulent). Listing eight specific billing codes does not cure this deficiency. *See Thayer*, 765 F.3d at 920 (finding allegations insufficient when the relator pled the use of specific billing codes, but failed to allege "when or how often upcoding took place"). Furthermore, Dicken did not provide details about how the Northwest Defendants used each of the codes, or the list, to defraud. *See id.* (finding insufficient the general allegation that codes were billed despite "client[s] ha[ving] no medical problem[s]"). Dicken also failed to allege with enough specificity the amount of money defrauded from the Government; the one million dollar estimate is too speculative, without supporting facts, to satisfy Rule 9(b). *See id.* (finding insufficient the allegation that "the United States . . . ha[s] been damaged in an amount to be proven at trial").

In total, Dicken failed to plead sufficient details of a fraudulent billing scheme "to enable the defendant[s] to respond *specifically and quickly* to the potentially damaging allegations." *Id.* at 919 (emphasis added) (quoting *United States ex rel. Costner v. United States*, 317 F.3d 883,

888 (8th Cir. 2003)). Moreover, Dicken failed to explain how he has knowledge of the Northwest Defendants' billing practices and history.

b.  Indicia of Reliability

A relator who alleges the existence of a fraudulent scheme, but does not plead some representative examples, must plead indicia of reliability to support a strong inference that claims were actually submitted. *Id.* at 918. This can be shown by pleading facts that demonstrate the relator's personal knowledge of the defendant's billing practices and the actual submission of false claims. *Id.* Such knowledge "fulfills Rule 9(b)'s objective of protecting defendants from baseless claims." *Id.* Typically, doctors are unable to provide sufficient indicia of reliability because they usually do not have personal knowledge as to billing practices. *See id.* at 917 (distinguishing the relator in *Joshi*, a doctor, who did not explain how he discovered fraudulent claims and their submission); *see also United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 560 (8th Cir. 2006) (explaining that although doctors may not have knowledge of the details needed to satisfy Rule 9(b), the FCA and the Federal Rules provide no leniency).

Dicken argues that the Amended Complaint contains sufficient indicia of reliability, pointing to the allegations that he saw patient charts and discovered which tests, procedures, and diagnoses were unnecessary, not performed, or false. (Pl Br. 14, 17-19.) He asserts in his motion papers that the patient charts included billing information and that there is no other purpose to record a code in a patient chart than to support billing. (*Id.* at 17.)

Although Dicken alleges he is an "original source," has "direct, independent, and personal knowledge" of the fraud, and "saw" and "observed" Borgen and Tjelle file false Medicare claims, these allegations are either conclusory—and therefore not taken as true—or too general to meet Rule 9(b)'s standard. (Amend. Compl. ¶¶ 15-16, 27, 43, 51, 86, 91.) The only

non-conclusory and specific allegation with respect to the submission of false claims is that Dicken "heard Northwest's business manager tell [Borgen and Tjelle] they cannot bill a procedure with the diagnosis given and that they needed to change the diagnosis." (*Id.* ¶ 51.) But this allegation fails to explain how Dicken, an independent doctor who merely practiced in the same location, has substantial personal knowledge of the Northwest Defendants' billing practices and what claims they actually submitted to Medicare. Like the relator in *Joshi*, Dicken otherwise fails to allege any contextual basis for his "knowledge concerning the alleged submission of fraudulent claims." 441 F.3d at 558; *see Thayer*, 765 F.3d at 917, 919; *see also Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005) (holding that the relator did not establish sufficient indicia of reliability when he alleged, without explanation, that the defendants' practices "resulted in the submission of fraudulent claims").

It may be true, as Dicken argues, that he has personal knowledge of claims submitted to Medicare because he had access to the Northwest Defendants' patient charts, which he says included billing information. (*See* Pl. Br. 3, 6.) However, this fact is not alleged in the Amended Complaint, except to the extent that Dicken generally alleges he discovered the fraud by "going over [the Northwest Defendants'] medical files." (Amend. Compl. ¶ 29.) Granting reasonable inferences in Dicken's favor, this vague allegation cannot support a "strong inference" that claims were actually submitted. And though Dicken provided the Court with a Declaration and twenty-three example patient charts in the hopes of proving his personal knowledge, (*see* Dkt. No. 57), the Court cannot consider this outside information when evaluating a motion to dismiss under Rule 9(b), *see Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995) (allowing for consideration of matters outside the pleadings on a Rule 9(b) motion when the matters were attached to the *motion* to dismiss).

In summary, Dicken failed to allege sufficient facts to meet Rule 9(b)'s standard. The Amended Complaint includes very few specific facts relating to false claims, fails to include representative examples of false claims actually submitted by the Northwest Defendants, lacks allegations setting forth the particular details of a fraudulent billing scheme, and contains no explanation for Dicken's claimed knowledge of the Northwest Defendants' billing practices and history. Therefore, Dicken's FCA fraud claim (Count I) is dismissed.

2. *The FCA Conspiracy Claim*

FCA conspiracy claims contain two elements: (1) the defendants agreed upon a fraudulent scheme, the purpose of which was to "bring about the Government's payment of a false or fraudulent claim," and (2) the defendants performed at least one act in furtherance of this agreement. *Allison Engine Co., Inc. v. United States ex rel. Sanders*, 553 U.S. 662, 672-73 (2008); *see United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (also requiring damages). The elements of an FCA conspiracy claim must be pled with particularity. *Grubbs*, 565 F.3d at 193; *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).

Because the Amended Complaint fails to plead the FCA fraud claim with particularity, it also fails to meet Rule 9(b)'s standard with respect to the related conspiracy claim. *See United States ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 801 (8th Cir. 2011) (affirming dismissal of an FCA conspiracy claim when the relator failed to state FCA fraud claims); *see also Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1075 (8th Cir. 2016) (affirming dismissal of an FCA conspiracy claim when the alleged fraudulent acts did not violate the FCA as a matter of law). The Amended Complaint also does not contain one single non-conclusory, specific allegation showing that the Northwest Defendants jointly agreed to engage in a scheme to

defraud the Government, nor one example of an act performed by the Northwest Defendants in furtherance of such an agreement. Therefore, Dicken failed to plead his FCA conspiracy claim (Count II) with particularity, and, accordingly, it is dismissed. *See Corsello*, 428 F.3d at 1014 (affirming dismissal of a claim that failed to allege specifics as to any agreement or overt act).

### 3. Leave to Amend

Dicken, in his motion papers, informally requests leave to amend in the event his FCA fraud claims are insufficiently pled. (*See* Pl. Br. 26-28, 30-31; 2d Pl. Br. 15, 20.) However, Dicken did not propose any specific amendments, as required by D. Minn. LR 15.1(b). Because of this, the Court need not grant leave to amend. *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009) (affirming denial of leave to amend when the request was raised in motion papers and did not conform to D. Minn. LR 15.1); *Jacobs Trading, LLC v. Ningbo Hicon Int'l Indus. Co., Ltd.*, 872 F.Supp.2d 838, 850 (D. Minn. 2012) (same). It is also unclear whether Dicken has the personal knowledge required to plead facts meeting Rule 9(b)'s standard. This counsels in favor of denying leave to amend. *See United States ex. rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009) (affirming denial of leave to amend when the complaint did not meet Rule 9(b)'s standard, the plaintiff did not comply with D. Minn. LR 15.1, and the district court determined that proposed amendments offered at oral argument would be futile). Therefore, the Court does not grant leave to amend at this time.

**B. FCA Retaliation Claims' Statute of Limitations**

Dicken first expressly asserted an FCA retaliation claim against Sanford—and added Sanford as a defendant—when he amended his Complaint on August 17, 2016.[2] (*See* Dkt. No. 7

---

[2] Dicken disputes August 17, 2016 as the Amended Complaint's filing date. He argues instead that the Amended Complaint was filed on April 16, 2014. (Dicken's Memorandum in Opposition to Sanford's Motion to Dismiss ("2d Pl. Br.") 4, Dkt. No. 71.) The Court's Order

10

at 2.) He claims that Sanford terminated him in retaliation for reporting the Northwest Defendants' fraud. (*See* Amend. Compl. ¶¶ 130-67.) Sanford responds that this claim is barred by the three-year statute of limitations. (Sanford's Memorandum in Support of Its Motion to Dismiss ("Sanford Br.") 4-6, Dkt. No. 62.) Dicken disagrees,[3] arguing that the Amended Complaint relates back to the original Complaint's filing on October 1, 2013, so that the FCA retaliation claim falls within the applicable statute of limitations period. (*See* Dicken's Memorandum in Opposition to Sanford's Motion to Dismiss ("2d Pl. Br.") 15-16, Dkt. No. 71.)

Fed. R. Civ. P. 15(c)(1)(A)-(B) allows for relation back when either (1) the law providing the statute of limitations itself permits relation back or (2) the amended pleading asserts a claim arising out of the same conduct, transaction, or occurrence set out in the original complaint. If the plaintiff seeks to relate back using the second of these options, while also adding a new party, the new party must have, within 90 days of the original Complaint's filing, "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) [known] or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). The plaintiff bears the burden of proof to show that an amended pleading relates back. *See A.P.I., Inc. v. Home Ins. Co.*, 706 F.Supp.2d 926, 945 (D. Minn. 2010).

First, the FCA does not itself provide for relation back here. The FCA specifically provides for relation back when the Government elects to intervene and adds new claims. *See* 31 U.S.C. § 3731(c). But "[relators] may not take advantage of the relation back provision in the

---

of July 29, 2016 clearly establishes that Dicken did not file the Amended Complaint on that date. (*See* Dkt. No. 35 at 2.)

[3] Dicken argues, in part, that the statute of limitations is either six or ten years under 31 U.S.C. § 3731(b). (*See* 2d Pl. Br. 13-14.) When Congress amended the FCA in 2010, however, it created a three-year statute of limitations for retaliation claims. *See* Dodd-Frank Act, Pub. L. 11-203, § 3301(c)(2), 124 Stat. 2079 (2010) (codified as amended at 31 U.S.C. § 3730(h)(3)).

11

FCA, which applies only to the Government's pleadings." *United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 883 (D.C. Cir. 2010); *see Hayes v. Dep't of Educ. of New York*, 20 F.Supp.3d 438, 449-50 (S.D.N.Y. 2014) (stating that the FCA "expressly extends relation back only to the Government's pleadings, not to those of the relator" and that "it is not possible to read an implicit authorization for relation back of retaliation claims"). Therefore, Dicken must resort to Rule 15's second route for relation back, which in part requires that Sanford had notice of the original Complaint within 90 days of its filing.

Sanford argues it did not have 90 days' notice because the Complaint was filed under seal, as required by 31 U.S.C. § 3730(b). (Sanford's Reply Memorandum 7-9, Dkt. No. 73.) After the original Complaint was filed, the Government sought extensions to intervene five times, prolonging the seal on the Complaint by approximately 31 months. (*See* Dkt. Nos. 6, 13, 14, 21, 28.) There is no evidence in the record that Sanford received notice of the FCA retaliation claim until after this delay. The length of the delay also suggests that Sanford would be prejudiced by relation back because it would be forced to defend a claim based on conduct that occurred more than six years ago. *See Fuller v. Marx*, 724 F.2d 717, 720 (8th Cir. 1984) ("[Relation back] is designed to allow the addition of new claims only if there is no unfair surprise or prejudice."); s*ee also Schiavone v. Fortune*, 477 U.S. 21, 31 (1986) (stating that the "linchpin" of relation back is "notice, and notice within the limitations period").

Dicken argues that despite the FCA and Rule 15's terms, the Court should allow relation back because otherwise the Court's precedent will have a "chilling effect" on qui tam actions. (2d Pl. Br. 15-16.) He theorizes that non-relation back will force relators to choose between filing FCA fraud claims (on behalf of the Government) and pursuing retaliation claims (on their own behalf). (*Id.*) Presented with this dilemma, Dicken predicts that relators will likely pursue

the retaliation claims, leading to a decrease in qui tam actions and, consequently, a loss of their associated "public benefit[s]." (*Id.* at 16.)

Regardless of the merits of Dicken's policy argument, it is not for the Court to ignore or modify either the FCA or Rule 15's plain design. *See United States v. The Baylor Univ. Med. Ctr.*, 469 F.3d 263, 270 (2d Cir. 2006) ("The secrecy required by § 3730(b) is incompatible with [relation back], because (as is well-settled) the touchstone for relation back pursuant to Rule 15(c)(2) is notice . . . . By design, the seal provision of § 3730(b) deprives the defendant in an FCA suit of the notice usually given by a complaint."). Accordingly, Dicken's FCA retaliation claim does not relate back. *See Hayes*, 20 F.Supp.3d at 449. Because the FCA retaliation claim (Count III) is barred by the three-year statute of limitations, it is dismissed with prejudice.

### C. Supplemental Jurisdiction

Having decided to dismiss Dicken's federal claims without leave to amend, and noticing a lack of complete diversity between the parties, the Court must decide whether to exercise supplemental jurisdiction over the remaining Minnesota law claims. In making this decision, the Court "should consider and weigh . . . the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). In most pre-trial circumstances, the balance of these factors will point toward declining to exercise supplemental jurisdiction. *Id.* at 350 n.7.

Dicken argues that dismissal of the state law claims would not serve judicial economy, convenience, fairness, or comity. (2d Pl. Br. 28-29.) But beyond these general contentions, Dicken has not identified any compelling reasons as to why the balance of factors points toward exercising supplemental jurisdiction in this case. Given the early stage of this litigation and the difficult issues presented by some of the remaining state law claims, the Court finds that the

balance of factors points toward declining to exercise supplemental jurisdiction. *See Hassett v. Lemay Bank and Trust Co.*, 851 F.2d 1127, 1130 (8th Cir. 1988) (affirming refusal to exercise supplemental jurisdiction at the pre-trial phase after the federal claims were dismissed, even though the state law claims were related); *Magee v. Trustees of the Hamline Univ.*, 957 F. Supp. 2d 1047, 1060-62 (D. Minn. 2013) (dismissing state law claims when the litigation was pre-discovery and one claim implicated difficult questions of state law, even though the action had been pending for two years), *aff'd*, 747 F.3d 532 (8th Cir. 2014); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them surer-footed reading of applicable law."). The remaining Minnesota state-law claims (Counts IV through VII) are therefore dismissed.

## IV. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants Northwest Eye Center, P.A., Dr. Christopher J. Borgen, and Dr. Eric M. Tjelle's joint Motion to Dismiss [Dkt. No. 49] is GRANTED for the reasons stated in this Order.

2. Defendant Sanford Health Network's Motion to Dismiss [Dkt. No. 60] is GRANTED for the reasons stated in this Order.

3. Count III of the Amended Complaint is DISMISSED WITH PREJUDICE.

4. Counts I, II, IV, V, VI, and VII of the Amended Complaint are DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 27, 2017.

                                               s/Joan N. Ericksen
                                               JOAN N. ERICKSEN
                                               United States District Judge