# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA ex rel.
ROBERT A. DICKEN,

      Plaintiff,

v.

NORTHWEST EYE CENTER, P.A.,
CHRISTOPHER J. BORGEN, ERIC M.
TJELLE, and SANFORD HEALTH
NETWORK, *a South Dakota non-profit
corporation doing business in Minnesota*,

      Defendants.

Case No. 13-CV-2691 (JNE/KMM)
**ORDER**

This matter is before the Court on Plaintiff Dr. Robert A. Dicken's motion to vacate the Court's prior dismissal of Counts I and II of the Amended Complaint and for leave to file a Second Amended Complaint. (*See* Dkt. Nos. 75, 76, 77.) Dicken seeks to revive his False Claims Act ("FCA") claims against Defendants Northwest Eye Center, P.A., Dr. Christopher Borgen, and Dr. Eric Tjelle (collectively, the "Northwest Defendants"). In conjunction with his motion, Dicken submitted a proposed Second Amended Complaint ("SAC"), with attached exhibits. (*See* Dkt. Nos. 80-1 through 25.) For the following reasons, the Court grants Dicken's motion in part.

## I. STANDARD OF REVIEW

"[Plaintiffs] remain free where dismissal orders do not grant leave to amend to seek vacation of the judgment under Rules 59 and 60 of the Federal Rules of Civil Procedure and offer an amended complaint in place of the dismissed complaint." *Quartana v. Utterback*, 789 F.2d 1297, 1300 (8th Cir. 1986); *see Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 962 (8th Cir. 2015), *cert. denied,* 136 S. Ct. 804 (2016). Courts have "considerable discretion to deny a post-judgment motion for leave to amend because such motions are disfavored, but may not

ignore the Rule 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits, particularly when a fraud complaint has been dismissed for failure to comply with the pleading requirements of Rule 9(b)." *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009). "In the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis,* 371 U.S. 178, 182 (1962).

Futility of amendment is one reason to deny leave. *See id.* When evaluating futility, courts determine whether the proposed amended complaint is duplicative, frivolous, or could survive a motion to dismiss for failure to state a claim under Rule 12(b)(6).[1] *See Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719-20 (8th Cir. 2014). Courts should grant post-dismissal leave to amend when amendment will not be futile, there are no other reasons to deny leave, and amendment is needed to afford a plaintiff an "opportunity to test his claims on the merits." *United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 744 (8th Cir. 2014) (quoting *Foman*, 731 U.S. at 182).

## II. DISCUSSION

The Court previously reasoned that Dicken failed to plead his FCA claims (Counts I and II of the Amended Complaint) with enough specificity to meet Rule 9(b)'s heightened pleading standard. *See United States ex rel. Dicken v. Nw. Eye Ctr., P.A.*, No. 13-CV-2691 (JNE/KMM), 2017 WL 758572, at *2-5 (D. Minn. Feb. 27, 2017). The Court explained that Dicken, who

---

[1] In evaluating a 12(b)(6) motion, the Court may consider public records, materials that do not contradict the complaint, or materials that are "necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999) (internal quotation marks omitted). Matters outside of the pleadings should not be considered on a motion for leave to amend. *See S.S. Silberblatt, Inc. v. E. Harlem Pilot Block—Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42-43 (2d Cir. 1979); *Hebert v. Winona Cty.*, No. 15-CV-469 (RHK/JJK), 2016 WL 7888036, at *5 (D. Minn. Apr. 7, 2016). Accordingly, the Court only considers the SAC and its incorporated exhibits and declines to consider the other documents submitted by the Parties.

alleged that the Northwest Defendants engaged in a systematic scheme of fraud, could meet this standard by pleading some representative examples of false claims showing a continuous pattern of fraud. *See id.* at *2 (citing *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557-58 (8th Cir. 2006)). In the alternative, Dicken could plead "both the particular details of the scheme and indicia of reliability that support a strong inference that claims were actually submitted." *Id.* (citing *United States ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 917-18 (8th Cir. 2014)). The same standards apply to the SAC.

**A. Representative Examples**

Dicken previously failed to plead any representative examples of false claims actually submitted to the Government. *See id.* at *2-3. The SAC suffers from the same deficiency; it does not plead any representative examples of any *claims* submitted to Medicare, though it does incorporate patient charts that list CPT and ICD-9 codes that Dicken alleges the Northwest Defendants used when submitting claims to Medicare. (*See, e.g.*, SAC ¶¶ 141-63.) The patient charts may be indicative of what was actually billed, but they do not include information about claims actually submitted to Medicare. Because Dicken did not plead any representative examples, he must allege the scheme's details and sufficient indicia of reliability.

**B. Details of the Scheme to Defraud**

The Court previously held that Dicken's Amended Complaint identified the who, when, and where of the fraud, but failed to set forth the what, how, and how often. *See Dicken*, 2017 WL 758572, at *3. Dicken had only alleged that false claims were submitted for "many" and a "majority" of patients, did not explain how the Northwest Defendants used CPT and ICD-9 codes to defraud, and generally estimated (without explanation) that the damages were more than $1 million. *See id.*

3

Like the Amended Complaint, the SAC identifies the who, when (a new period from 2002 to 2014), and where. (*See* SAC ¶¶ 6, 10, 22.) The SAC also sufficiently alleges the what, how, and how often. For example, Dicken explains how, in numerous cases, a patient's corrected visual acuity precluded a diagnosis of retinal edema, but Borgen and Tjelle diagnosed the patient with retinal edema in order to justify performing unnecessary, non-routine tests. (*See id.* ¶¶ 141-63.) He alleges that Borgen and Tjelle performed these tests on an almost-daily basis, sometimes on up to ten patients per day. (*See id.* ¶¶ 13, 63-65.) They also engaged in churning by repeating the unnecessary tests every six months. (*See id.* ¶¶ 21, 94.) Using estimates of an optometrist's appointment capacity each day and the Northwest Defendants' patient pool composition, multiplied by the number of working days in a year, multiplied by the expected reimbursement rates for the unnecessary tests, Dicken calculates that the loss to the Government is approximately $500,000 to over $1 million per doctor, per year. (*See id.* ¶¶ 63-65.) With these additional details, the SAC contains enough specificity to meet Rule 9(b)'s standard for describing the scheme. But Dicken must have also alleged sufficient indicia of reliability.

**C. Sufficient Indicia of Reliability**

The Eighth Circuit has consistently required relators to allege the "basis for knowledge concerning the alleged submission of fraudulent claims." *Joshi*, 441 F.3d at 558. Relators must allege sufficient indicia of reliability about their basis for knowledge in order to support a strong inference that false claims were actually submitted. *Thayer*, 765 F.3d at 917-19. This requirement "is context specific and flexible." *Id.* at 918 (quoting *United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 190 (5th Cir. 2009)). It may be met by alleging "details about the defendant's billing practices and . . . personal knowledge of the defendant's submission of false claims," but a slightly lesser showing will suffice so long as it enables the defendant to "respond

4

specifically and quickly to the potentially damaging allegations." *Id.* at 918-19 (quoting *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003)). For example, in *Grubbs*, a case cited multiple times in *Thayer*, the relator alleged his "first-hand experience of the scheme unfolding as it related to him," describing in detail how the defendants attempted to include him in the fraud, the specific dates they recorded unprovided services in patient files, and which CPT codes they used. *Grubbs*, 565 F.3d at 192. The Fifth Circuit held that it would "stretch the imagination" to infer that the defendants went through the charade of recording fraudulent services in patient files, "only for the scheme to deviate from the regular billing track at the last moment so that . . . services never get billed." *Id.* The court thus concluded that the relator had alleged sufficient indicia of reliability. *See id.*

Dicken does not allege that he had direct access to the Northwest Defendants' billing systems or claims, except that he sometimes conferred with Borgen and Tjelle about billing. (*See* SAC ¶ 95.) He primarily learned about the billing through conversations with others who allegedly have knowledge of the Northwest Defendants' billing practices (the office manager, Borgen and Tjelle themselves, and other doctors and administrators) and by examining patients and reviewing patient charts created by Borgen and Tjelle. (*See id.* ¶¶ 20, 24, 95, 172, 174-75, 177.) The SAC incorporates the patient charts, which include the CPT and ICD-9 codes Dicken alleges the Northwest Defendants used when submitting false claims. (*See* Dkt. Nos. 80-2 through 25.) Dicken explains how the Northwest Defendants abused these codes, and how often. (*See* SAC ¶¶ 63-65, 128, 141-63.) He also alleges that the Northwest Defendants repeatedly sought to include him in a referral scheme related to the alleged fraud. (*See id.* ¶ 177.)

In view of the SAC's allegations, as in *Grubbs*, it would stretch the imagination to think that the Northwest Defendants did not actually submit false claims to Medicare pursuant to the

alleged scheme. Dicken has alleged enough details and sufficient indicia of reliability to support a strong inference that claims were actually submitted. The SAC's allegations are specific enough to afford the Northwest Defendants a fair opportunity to respond and "warrant further judicial process." *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 125-27 (D.C. Cir. 2015), *cert. denied,* 136 S. Ct. 2505 (2016).

The Northwest Defendants argue, however, that the SAC does not allege sufficient indicia of reliability for every year of the scheme. (*See* Defendants' Memorandum in Opposition ("Def. Br.") 16-17, Dkt. No. 83.) But they offer no support for the proposition that a relator must allege sufficient indicia of reliability throughout the entire life of a scheme, especially when the relator alleges—as here, (*see* SAC ¶ 42 n.1)—that he continued to see the scheme's coding pattern in patient charts after his proximity to the scheme decreased, *see United States ex rel. Wood v. Allergan, Inc.*, --- F. Supp. 3d ---, No. 10-CV-5645 (JMF), 2017 WL 1233991, at *34-35 (S.D.N.Y. Mar. 31, 2017); *see also Joshi*, 441 F.3d at 560 ("Nothing requires [the relator] to state every factual detail concerning every alleged fraudulent claim submitted during the last sixteen years; rather, [the relator] need only plead some representative examples . . . .").

**D. Statutes of Limitation and Relation Back**

The Northwest Defendants argue that the claims within the SAC, if allowed, will be barred by the FCA's six-year statute of limitations under 31 U.S.C. § 3731(b)(1). (Def. Br. 18-19.) Dicken argues that the claims will relate back and that the Court should apply the ten-year statute of limitations under § 3731(b)(2). (*See* Plaintiff's Memorandum in Support of His Motion to Vacate and for Leave to Amend ("Pl. Br.") 9-10, 14, 14 n.2, Dkt. No. 78; Plaintiff's Reply Memorandum ("Pl. Reply Br.") 21, Dkt. No. 89.)

The Court may consider whether proposed claims will be barred by applicable statutes of limitation when evaluating futility. *See Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). The claims within the SAC arise "out of the same conduct, transaction, or occurrence set out—or attempted to be set out—in the original [Complaint]," so the SAC will relate back to the original Complaint's October 1, 2013 filing date. Fed. R. Civ. P. 15(c)(1)(B). However, the claims will be restricted by the applicable statute of limitations, which is six years because the Government chose not to intervene. *See* 31 U.S.C. § 3731(b)(1); *United States ex rel. Sanders v. N. Am. Bus Indus., Inc.*, 546 F.3d 288, 293-96 (4th Cir. 2008); *see also Joshi*, 441 F.3d at 558-59 (stating that the court was satisfied that the ten-year statute of limitations in § 3731(b)(2) did not apply when the Government did not intervene, and the relator was aware of the alleged FCA violations more than three years before filing suit). Therefore, the FCA claims contained within the SAC will be limited to false claims submitted on or after October 1, 2007. *See Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 415 (2005) (stating that the FCA's statute of limitations begins to run on "the date the defendant submitted a false claim for payment").

Because Dicken alleged the specific details of a scheme to submit false claims to the Government and sufficient indicia of reliability to support a strong inference that such claims were submitted, the Court finds that the proposed amendments meet Rule 9(b)'s pleading standard and do not suffer from the same deficiencies as the Amended Complaint. Based on the arguments before the Court, the amendments in the proposed SAC are not futile. Seeing no apparent reasons to deny leave, the Court grants Dicken an opportunity to test his claims on the merits. However, because part of the alleged scheme will be barred by the FCA's six-year statute

of limitations, the Court grants Dicken leave to amend only to the extent he seeks to plead FCA claims for false claims submitted to the Government on or after October 1, 2007.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiff Robert A. Dicken's motion to vacate and for leave to amend [Dkt. No. 77] is GRANTED IN PART, to the extent Plaintiff Robert A. Dicken requests the Court to vacate the February 28, 2017 Judgment and grant leave to amend.

2. The February 28, 2017 Judgment [Dkt. No. 76] is VACATED.

3. Plaintiff Robert A. Dicken is GRANTED leave to file a Second Amended Complaint within ten days of this Order. The Second Amended Complaint must comply with this Order and be in substantially the same form as the one proposed at Dkt. No. 80-1, together with any incorporated exhibits.

Dated: May 30, 2017.

s/Joan N. Ericksen  
JOAN N. ERICKSEN  
United States District Judge